**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge William J. Martínez**

Civil Action No. 13-cv-2077-WJM

PEGGY L. WELLS,

    Plaintiff,

v.

CAROLYN W. COLVIN, Acting Commissioner of Social Security,

    Defendant.

---

**ORDER AFFIRMING COMMISSIONER'S DENIAL OF BENEFITS**

---

    This social security benefits appeal is before the Court under 42 U.S.C. § 405(g). Plaintiff Peggy L. Wells ("Plaintiff") challenges the final decision of Defendant, the Commissioner of Social Security ("Commissioner"), denying her application for disability insurance benefits. The denial was affirmed by an administrative law judge ("ALJ"), who ruled Plaintiff was not disabled within the meaning of the Social Security Act ("Act"). This appeal followed.

    For the reasons set forth below, the ALJ's decision denying Plaintiff's application for Social Security disability benefits is AFFIRMED.

## I.  BACKGROUND

    Plaintiff Peggy L. Wells ("Plaintiff") was born on June 18, 1961 and was 46 years old on the alleged disability onset date. (Admin. Record ("R.") (ECF No. 11) at 25.) Plaintiff has at least a high school education and prior work experience as a campground maintenance worker, food preparer, thrift store owner/manager, wait staff,

and retail grocery worker. (*Id.*)

Plaintiff filed an application for a period of disability and disability insurance benefits on April 15, 2008, alleging that she had been disabled since March 28, 2008 due to depression, anxiety, and panic attacks. (R. 71, 145.) Her disability onset date was later amended to August 23, 2007. (R. 11.) Plaintiff's application was initially denied on July 1, 2008. (R. 71.)

After requesting a hearing, Plaintiff's claims were heard by Administrative Law Judge ("ALJ") William Musseman on March 5, 2010. (R. 38.) Plaintiff and vocational expert Dennis Duffin testified at the administrative hearing. (R. 39.) On April 2, 2010, ALJ Musseman issued a written decision finding that Plaintiff was not disabled. (R. 53-63.) Plaintiff sought review by the Appeals Council, which remanded her case to the ALJ for further proceedings. (R. 67-70.)

ALJ Musseman held a second hearing on March 23, 2011. (R. 32.) Plaintiff was the only witness who testified at this hearing. (R. 35-36.) On June 9, 2011, the ALJ issued a written decision in accordance with the Commissioner's five-step sequential evaluation process.[1] (R. 8-31.) At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since August 23, 2007. (R. 13.) At step two, he found that Plaintiff suffered from an affective disorder and an anxiety disorder, both of

---

[1] The five-step process requires the ALJ to consider whether a claimant: (1) engaged in substantial gainful activity during the alleged period of disability; (2) had a severe impairment; (3) had a condition which met or equaled the severity of a listed impairment; (4) could return to her past relevant work; and, if not, (5) could perform other work in the national economy. *See* 20 C.F.R. § 404.1520(a)(4), 416.920(a)(4); *Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988.) The claimant has the burden of proof through steps one to four; the Social Security Administration has the burden of proof at step five. *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007).

which were severe impairments. (R. 14.) At step three, the ALJ found that Plaintiff's affective and anxiety disorders, while severe impairments, did not meet any of the impairments or combination of impairments listed in the social security regulations. (R. 16.) The ALJ assessed Plaintiff's residual functional capacity ("RFC"), finding that she had the RFC to perform a full range of work at all exertional levels, but with the non-exertional limitations that her work involve "no dealing with the general public, with only occasional interaction with coworkers and supervisors" and "no complex tasks". (R. 17.) Given this RFC, at step four the ALJ found that Plaintiff could not perform her past relevant work. (R. 25.) At step five, based on the testimony of the vocational expert, the ALJ found that Plaintiff could work as a hand packager or a floor waxer, both of which exist in significant numbers in the national economy. (R. 26.) Accordingly, the ALJ found that Plaintiff was not disabled within the meaning of the Act and therefore was not entitled to benefits. (*Id.*)

The Appeals Council denied Plaintiff's request for review on June 10, 2013. (R. 1.) Thus, the ALJ's June 9, 2011 decision is the final administrative action for purposes of review.

## II.  STANDARD OF REVIEW

The Court reviews the Commissioner's decision to determine whether substantial evidence in the record as a whole supports the factual findings and whether the correct legal standards were applied. *Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Id*. "It requires more than a scintilla, but less than a

preponderance." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007). Evidence is not substantial if it is overwhelmed by other evidence in the record. *Grogan v. Barnhart*, 399 F.3d 1257, 1261-62 (10th Cir. 2005). In reviewing the Commissioner's decision, the Court may neither reweigh the evidence nor substitute its judgment for that of the agency. *Salazar v. Barnhart*, 468 F.3d 615, 621 (10th Cir. 2006). "On the other hand, if the ALJ failed to apply the correct legal test, there is a ground for reversal apart from a lack of substantial evidence." *Thompson v. Sullivan*, 987 F.2d 1482, 1487 (10th Cir. 1993).

### III. ANALYSIS

On appeal, Plaintiff raises three issues: (1) the ALJ failed to properly weigh the medical opinions of treating physicians and counselors; (2) the ALJ erred in giving more weight to a non-examining physcian than to Plaintiff's treating physicians; (3) the ALJ's RFC was not supported by substantial evidence. (ECF No. 15 at 17.) The Court will address each of Plaintiff's arguments in turn.

**A.    Treating Doctors' Medical Opinions**

Plaintiff contends that the ALJ improperly weighed the opinions of Dr. Tycner and Dr. Sciammarella, both of whom were Plaintiff's treating physicians. (ECF No. 15 at 22-33.)

The opinion of a treating physician is generally "entitled to great weight because it reflects expert judgment based on continuing observation of a patient's condition over a prolonged period of time." *Williams v. Chater*, 923 F. Supp. 1373, 1379 (D. Kan. 1996). However, an ALJ may disregard that opinion if it is contradicted by other

medical evidence, or otherwise inconsistent with substantial evidence in the record. *See Marshall v. Astrue*, 315 F. App'x 757, 759-60 (10th Cir. 2009); 20 C.F.R. § 404.1527(d)(2). The analysis of how much weight to accord a treating source opinion is sequential:

> An ALJ must first consider whether the opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques. If the answer to this question is "no," then the inquiry at this stage is complete. If the ALJ finds that the opinion is well-supported, he must then confirm that the opinion is consistent with other substantial evidence in the record. In other words, if the opinion is deficient in either of these respects, then it is not entitled to controlling weight.

*Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003) (citing 20 C.F.R. §§ 404.1527, 416.927).

If a treating physician's opinion is not given controlling weight, the ALJ must determine what weight, if any, the opinion deserves, considering the following factors:

> (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.

*Id.* at 1301 (internal quotations omitted). The ALJ need not explicitly discuss each individual factor. *See Oldham v. Astrue,* 509 F.3d 1254, 1258 (10th Cir. 2007). Nevertheless, the ALJ must consider every factor in determining the weight to be assigned to a medical opinion, and "if the ALJ rejects the opinion completely, he must then give specific, legitimate reasons for doing so." *Watkins*, 350 F.3d at 1301; *see* 20 C.F.R. § 404.1527(d)(2); Soc. Sec. Ruling ("SSR") 96–2p, 1996 WL 374188, at *4.

1.    Dr. Tycner

Dr. Tycner was Plaintiff's treating psychiatrist from November 2008 until late 2010. (R. 265-78, 293-97.) Dr. Tycner diagnosed Plaintiff as suffering from panic disorder without agoraphobia[2] and major depressive disorder. (R. 275.) On July 21, 2009, Dr. Tycner completed a Residual Functional Capacity Evaluation form stating that Plaintiff had reported suffering from anxiety attacks every 2-3 days with symptoms such as shortness of breath, numbness, sweating, and fear of leaving the house. (R. 265.) Dr. Tycner also indicated that Plaintiff had reported a fear of being in crowded places. (*Id*.) On these reports, as well as Dr. Tycner's treatment of Plaintiff, Dr. Tycner opined that Plaintiff had extreme[3] limitations in her ability to interact with the public, travel to unfamiliar places, and use public transportation, and marked limitations in her ability to carry out detailed instructions, maintain attention and concentration for extended

---

[2] Other places in the record, including on the Residual Functional Capacity Evaluation, Dr. Tycner indicates that Plaintiff suffers from anxiety disorder with agoraphobia. (R. 265.) The Court is unable to locate any explanation of the changed diagnosis, or determine whether this is an oversight or scrivener's error.

[3] The form completed by the treating providers in this case defined the relevant terms as follows:

| | |
|---|---|
| SLIGHT: | Some mild limitation in this area, but generally functions well. |
| MODERATE: | Moderate limitation in this area, but still able to function. |
| MARKED: | Serious limitations in this area. The ability to function in this area is severely limited but not precluded |
| EXTREME: | Severe limitations in this area. No useful ability to function in this area. |
| UNKNOWN: | Unable to assess limitations based on examination or review of medical records. |

(R. 265.)

periods, and understand and remember detailed instructions. (R. 265-66.) In all other areas, Plaintiff had either only slight or moderate limitations, or Dr. Tycner indicated that she did not know of any limitations. (*Id.*)

The ALJ reviewed Dr. Tycner's treatment history with Plaintiff and found that Dr. Tycner's opinions were not entitled to controlling weight because they were not supported by her treatment records. (R. 22.) The ALJ noted that the treatment records "showed that her condition was situational in nature, and related to relationship difficulties with family members, with non-compliance issues, and good control of her symptoms with medication, such that she only had mild symptoms and difficulties." (*Id.*) The ALJ also noted that Dr. Tycner relied heavily on Plaintiff's subjective reporting of her symptoms, particularly with regard to panic attacks, and that the objective evidence of her lifestyle did not align with the frequency or severity of such attacks. (R. 23.) Ultimately, the ALJ assigned no weight to Dr. Tycner's opinions. (*Id.*)

Plaintiff argues that the ALJ gave inappropriate reasons for giving Dr. Tycner's opinions no weight, and that there is not substantial evidence to support his bases for that decision. (ECF No. 15 at 23-25.) The Court disagrees. Inconsistency with other evidence in the record, including the doctor's own treatment notes, is a valid reason why a treating physician's opinions would not be given controlling weight. *See* 20 C.F.R. §§ 404.1527(c)(2); *Mounts v. Astrue*, 479 F. App'x 860, 866 (10th Cir. 2012). The fact that an opinion is based largely on a patient's subjective complaints, rather than objective medical evidence, is also a valid basis for discounting an opinion. See 20 C.F.R. § 404.1527(c)(3) ("The more a medical source presents relevant evidence to support a finding, particularly medical signs and laboratory findings, the more weight we

will give that opinion."). Finally, the fact that a claimant's lifestyle is inconsistent with a doctor's opinions is a proper consideration. See Starcher v. Colvin, 2013 WL 5504494, *3 (S.D.W.V. Oct. 2, 2013) (finding that lifestyle is an appropriate factor that can be considered under 20 C.F.R. § 404.1527(c)(6)).

The Court also finds that there is substantial evidence supporting each of the ALJ's findings. Plaintiff's treatment notes show that she frequently visits public places, including bars, which is contrary to Dr. Tycner's opinion that she has no functional ability to interact with the public. (R. 299.) The record contains numerous treatment notes that relate to problems with Plaintiff's family and her living situation, in contrast to the relatively few notes related to her anxiety or problems interacting with the public. This record evidence supports the ALJ's finding that Plaintiff's conditions are situational. (R. 281-87.)

Additionally, Dr. Tycner's own notes show that her opinions are based largely on Plaintiff's complaints of her own symptoms. (R. 265.) While it is certainly permissible for a physician—particularly one that specializes in mental health treatment—to rely on a patient's self-reported symptoms, the lack of objective evidence of Plaintiff's anxiety attacks is a valid reason to view medical opinions with suspicion.

Dr. Tycner's own treatment notes are also inconsistent with the severity of limitations she assigned to Plaintiff. Her notes show that she believed Plaintiff's condition was stable on medication, and that Plaintiff responded well to treatment. Dr. Tycner repeatedly gave Plaintiff a Global Assessment of Functioning ("GAF") score between 65 and 70, which indicates only mild symptoms. (R. 268-74.) Despite opining that Plaintiff had "marked" limitations in her ability to maintain attention and

concentration, Dr. Tycner's treatment notes express no concern for Plaintiff's memory (short or long term), thought processes, insight or judgment. (R. 268.)

Finally, and most significantly, there is an abundance of evidence in the record that contradicts Dr. Tycner's medical opinions, particularly with regard to the severity of Plaintiff's ability to interact with the public. The various medical opinions—mostly from Plaintiff's treating doctors and counselors—also vary widely. For example, Plaintiff's current treating psychiatrist, Dr. Sciammarella, opined that Plaintiff has only "moderate" limitations in her ability to interact appropriately with the general public. (R. 308.) One of Plaintiff's counselors agreed with Dr. Sciammarella and opined that she had "moderate" limitations in this area, while the other counselor opined that she had "marked" limitations in this area. (R. 289, 291.) This is but one example of the conflicting medical evidence in the record.

On review, the Court's task is "simply to review the Commissioner's legal analysis and examine the record to ensure that the evidence supporting the agency's decision is substantial." *Taylor v. Astrue*, 266 F. App'x 771, 776 (10th Cir. 2008). The Court may not reweigh the evidence or substitute its discretion for that of the Commissioner. *Hamlin v. Barnhart*, 365 F.3d 1208, 1214 (10th Cir. 2004). As set forth above, the Court finds that the ALJ adequately explained the basis for the weight he assigned to each medical opinion, applied the correct legal standard, and that substantial evidence supports the ALJ's reasoning. As such, Plaintiff has failed to show any error that requires remand or reversal.

2. <u>Dr. Sciammarella</u>

Dr. Sciammarella was Plaintiff's treating psychiatrist at the time of her second

hearing.  She opined that Plaintiff had mostly moderate limitations, with marked limitations in areas related to carrying out detailed instructions and working in coordination with others.  (R. 307-08.)  Dr. Sciammarella considered Plaintiff to have an extreme limitation in only two areas:  her ability to complete a normal workday without interruptions from psychologically based symptoms, and her ability to maintain attention and concentration for extended periods.  (*Id*.)

The ALJ gave no weight to Dr. Sciammarella's opinions based on his findings that they were "conclusory in nature, disproportionate to the medical evidence overall, and appear[ed] to have been made for the purpose of the claimant achieving a favorable result."  (R. 23.)  The ALJ also noted that Dr. Sciammarella "failed to provide any accompanying narration in support of her findings, and her findings are not supported by the evidence in the record."  (R. 23-24.)  Finally, the ALJ stated that Plaintiff's "treatment records do not support these findings, which reflects pervasive non-compliance issues, as [Dr. Sciamarella] met with the claimant on only three occasions, and on two of them the claimant admitted to being non-compliant with prescribed medication, and on the one occasion in which the claimant had been compliant, it was noted that her condition had improved, such that the was euthymic and in good spirits."  (R. 24.)

Plaintiff argues that the reasons given for failing to credit Dr. Sciammarella's opinions are not valid, and that there is not substantial evidence to support the ALJ's findings.  (ECF No. 15 at 26-28.)  With respect to the ALJ's statement that Dr. Sciammarella's opinions appear to be offered only for the purpose of achieving a favorable result for the Plaintiff, the Court agrees that there is no evidence supporting

this finding. However, even apart from this explanation, the Court finds that the ALJ asserted appropriate reasons for giving no weight to Dr. Sciammarella's opinions.

First, as set forth above, there is adequate medical evidence in the record which rebuts the severity of the limitations assigned by Dr. Sciammarella. For example, while Dr. Sciammarella opined that Plaintiff had "extreme" limitations in her ability to maintain attention for extended periods, Dr. Tycner opined that Plaintiff had only "marked" limitations in this area. (R. 266, 307.) Moreover, the fact that Dr. Sciammarella had only seen Plaintiff three times when she opined on these limitations is a valid consideration. *See Watkins*, 350 F.3d at 1301 (ALJ must consider length of treatment relationship). Finally, Dr. Sciamarella diagnosed Plaintiff with only mild depression, and her treatment notes state that, when Plaintiff was medication compliant, "[h]er mood has improved, no anxiety or irritability" and "[n]o mania or depression". (R. 311.) These mild symptoms are inconsistent with the severity of limitations assessed by Dr. Sciammarella. *See Castellano v. Sec'y of Health & Human Servs.*, 26 F.3d 1027, 1029 (10th Cir. 1994) (holding that it was not error for ALJ to reject opinion when doctor's treatment notes do not support such opinion).

Because "more than a scintilla" of evidence exists to support the ALJ's evaluation of Dr. Sciamarella's opinions, and that evidence was not overwhelmed by contrary evidence, the Court finds that the ALJ's analysis was supported by substantial evidence in the record. *See Lax*, 489 F.3d at 1084. Accordingly, the ALJ's decision to give Dr. Sciamarella's opinions no weight was not reversible error.

**B.     Counselors' Medical Opinions**

Plaintiff next objects to the manner in which her counselors' opinions—Mr. Dengler and Mr. Clemons—were weighed by the ALJ.  (ECF No. 15 at 28-33.)  Because Mssrs. Dengler and Clemons are not "acceptable medical sources" under the Social Security Regulations, their opinions are not entitled to controlling weight.  Social Security Ruling ("SSR") 06-03p, 2006 WL 2329939, at *2 (Aug. 9, 2006).     However, they are considered "other sources" and their opinions may be used to show the severity of the individual's impairments and the impairments' impact on a claimant's ability to function.  *Id.*  The ALJ should consider information from "other sources" to determine whether such information "support[s] or contradict[s] a medical opinion."  *Id*. at *4.  Generally, the ALJ should explain the weight given to the opinions from "other sources," "or otherwise ensure that the discussion of the evidence in the determination or decision allows a claimant or subsequent reviewer to follow the adjudicator's reasoning, when such opinions may have an effect on the outcome of the case."  *Id.* at *6.

The ALJ found that the counselors' opinions about Plaintiff's limitations were not supported by their clinical notes.  (R. 25.)  This finding is supported by substantial evidence in the record.  For example, Mr. Clemens opined that Plaintiff had "extreme" limitations in dealing with the public and traveling in unfamiliar places.  (R. 291.)  Yet the counselors' clinical notes show that Plaintiff frequently interacted with the public, had an active social life, and was able to tolerate new situations.  (R. 281-87.)

As with the treating physicians' opinions discussed above, the Court finds that the ALJ discussed the counselors' opinions, gave valid reasons for discounting them,

and that there is sufficient factual support for those findings. As such, Plaintiff has failed to establish any error with regard to the ALJ's treatment of the opinions of Plaintiff's counselors.

**C.      Giving More Weight to Non-Examining Physician than Treating Physician**

The ALJ assigned "great weight" to the opinions of state agency psychological consultant, Dr. Ellen Ryan. (R. 16.) Plaintiff contends that the ALJ erred in assigning "great weight" to the opinions of this non-examining physician while giving "no weight" to any of Plaintiff's treating physicians. (ECF No. 15 at 33-37.)

"When considering the weight of non-treating sources, the ALJ must determine the appropriate weight given to the source by looking to the factors that apply to all medical opinions." *Retana v. Astrue*, 2012 WL 1079229, at *4 (D. Colo. Mar. 30, 2012). "If an ALJ intends to rely on a nontreating physician or examiner's opinion, he must explain the weight he is giving to it." *Hamlin*, 365 F.3d at 1215 (citing 20 C.F.R. § 416.927(f)(2)(ii)).

The ALJ's statements indicate that the ALJ considered the factors required by the regulations, including Dr. Ryan's status as a state agency physician, and her opinions' consistency with the record evidence. *See* 20 C.F.R. §§ 404.1527, 416.927. The ALJ specifically found that Dr. Ryan's opinions were consistent with the evidence as a whole, and that her assessment was well supported. (R. 17.) Further, as there is sufficient evidence in the medical records to support Dr. Ryan's opinions, the Court must defer to the ALJ's evaluation of the evidence and may not reweigh it in his place. *See Salazar*, 468 F.3d at 621. The simple fact that the ALJ chose to credit a non-

examining medical opinion over Plaintiff's treating physicians does not warrant reversal. *See Gonzales v. Colvin*, 515 F. App'x 716, 719 (10th Cir. 2013) (ALJ did not err in crediting non-examining physician opinion over treating physician opinion).

### D.     RFC Assessment

Plaintiff contends that the ALJ's RFC is not supported by the evidence as a whole. (ECF No. 15 at 38.) The RFC is an assessment of a claimant's capabilities in a work setting to determine "the most [she] can still do despite [her] limitations." 20 C.F.R. § 404.1545(a)(1). An ALJ must make specific RFC findings based on all of the relevant evidence in the case record. *See Winfrey v. Chater*, 92 F.3d 1017, 1023 (10th Cir. 1996); SSR 96–8p, 1996 WL 374184, at *5 (July 2, 1996) (evidence considered in an RFC assessment may include the claimant's medical history, medical signs and laboratory findings, and medical source statements). The RFC analysis must explain "how the evidence supports each conclusion, citing specific medical facts . . . and nonmedical evidence". SSR 96–8p. The ALJ's articulation of a claimant's RFC must include:

> the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis . . . and describe the maximum amount of each work-related activity the individual can perform based on the evidence available in the case record. The adjudicator must also explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved.

*Id.* The ALJ's findings regarding the RFC must be supported by substantial evidence. *See Haddock v. Apfel*, 196 F.3d 1084, 1088 (10th Cir. 1999).

In this case, the ALJ found that Plaintiff had the RFC to perform a full range of work, but limited her ability to work with the general public, co-workers, and supervisors,

and also limited her to jobs with a Specific Vocational Preparation of 2 or less.  (R. 17.) The Court finds substantial support for this RFC in the record.  Plaintiff's current treating psychiatrist opined that Plaintiff was only "moderately" limited in her ability to interact with the public, and the treatment notes from Plaintiff's other providers show that she frequently engages with other people.  (R. 308.)  Plaintiff's treatment notes show that her providers expressed no concerns with her memory, thought processes, or ability to process information, particularly when she is medication compliant.  (R. 288-75.)

Plaintiff does not explain how this RFC is inconsistent with the record or with her abilities, arguing only that the RFC "does not reflect plaintiff's actual level of functioning."  (*Id*.)  The Court disagrees, and finds that the ALJ's RFC has substantial support in the record.  As such, Plaintiff has failed to show that the manner in which the ALJ formulated the RFC was erroneous.

### IV.  CONCLUSION

For the reasons set forth above, the Commissioner's decision is AFFIRMED.

Dated this 16th day of September, 2014.

BY THE COURT:

William J. Martinez
United States District Judge